**Ashley M. Gjøvik, JD**
*In Propria Persona*
(415) 964-6272
ashleymgjovik@protonmail.com
Boston, MA

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

IN RE:

ASHLEY M. GJOVIK.

CHAPTER 7 CASE NO: 25–11496

A.P. NO. 25-01104

JUDGE CHRISTOPHER J. PANOS

DEBTOR'S MOTION FOR ORDER TO SHOW CAUSE AND SANCTIONS AGAINST CREDITOR APPLE INC.

CREDITOR NO. 21011446

FED. R. BANKR. P. RULE 9013

# TABLE OF AUTHORITIES

## US COURT OF APPEALS CASES

*Handeen v. Lemaire,* 112 F.3d 1339, 1350-51 (8th Cir. 1997) ---------------------------------------- 9

*In re A & C Properties* 784 F.2d 1377 (9th Cir. 1986) ---------------------------------------------- 10

*In re Berry Estates,* 812 F.2d 67, 71 (2d Cir.), cert. denied, 484 U.S. 819, 108 S. Ct. 77, 98 L.
    Ed. 2d 40 (1987) ---------------------------------------------------------------------------------- 10

*In re Fabricators, Inc.*, 926 F.2d 1458 (5th Cir. 1991). ------------------------------------------- 11

*In re Gil Alberto De Jesus Gomez, III,* 592 B.R. 696 (9th Cir. B.A.P. 2018). -------------------- 11

*St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir. 1982) --- 10

*Under In re Lazar,* 83 F.3d 306 (9th Cir. 1996) ------------------------------------------------------ 11

## US DISTRICT COURT CASES

*Action Drug Co., Inc. v. Overnite Transp. Co.*, 724 F. Supp. 269 (D. Del. 1989) ---------------- 10

*Gjovik v. Apple Inc.*, Case No. 3:23-cv-04597-EMC (N.D. Cal.). --------------------------------- 5

## U.S. AND STATE STATUTES

11 U.S.C. § 327 ---------------------------------------------------------------------------------------- 7

11 U.S.C. § 502(d) ----------------------------------------------------------------------------- 11, 12

11 U.S.C. § 726(a)(1)-(6) --------------------------------------------------------------------------- 10

18 U.S.C.A. § 1962 (a) -------------------------------------------------------------------------------- 9

18 U.S.C.A. § 1962 (c) and (d) ---------------------------------------------------------------------- 9

28 U.S.C. § 1334 ---------------------------------------------------------------------------------------- 9

## U.S. AND STATE RULES & REGULATIONS

Fed. R. Bankr. P. 2002 -------------------------------------------------------------------------------- 8

Fed. R. Bankr. P. 6004 -------------------------------------------------------------------------------- 8

Fed.R.Bankr.P. Rule 9011 --------------------------------------------------------------------------- 16

Local Rule 9013-1(b) -------------------------------------------------------------------------------- 16

## AGENCY ADJUDICATIONS

*Ashley M. Gjovik, Apple Inc,* NLRB Case No. 32-CA-282142, 32-CA-283161 (2021-) ---------- 6

*Ashley M. Gjovik, Apple Inc,* NLRB Trilateral National Settlement No. 32-CA-284428 with Permanent Injunction (2021-2025). ---------------------------------------------------------------- 6

*In re Apple Inc.,* CFPB Admin. Proc. File No. 2024-CFPB-0012, Consent Order (Oct. 23, 2024) ------------------------------------------------------------------------------------------------- 6

*In re Goldman Sachs Bank USA,* CFPB Admin. Proc. File No. 2024-CFPB-0011, Consent Order (Oct. 23, 2024) ------------------------------------------------------------------------------- 7

# TABLE OF CONTENTS

- [NATURE OF MOTION AND EMERGENCY RELIEF REQUESTED](#) ............. 4
- [FACTUAL BACKGROUND](#) ................................................................. 4
- [LEGAL ARGUMENT](#) ........................................................................ 9
  - [APPLE'S CONDUCT CONSTITUTES CONTEMPT OF THIS COURT'S AUTHORITY](#) .................................................................................. 9
  - [APPLE IS VIOLATING THE AUTOMATIC STAY UNDER 362 IN ATTEMTING TO IMPROPERLY SEIZE AND CONTROL THE ESTATE'S PROPERTY](#) ................................................................................ 10
  - [APPLE'S CLAIM SHOULD BE DISALLOWED OR SUBORDINATED](#) ............. 11
  - [COURT'S INHERENT POWERS AUTHORIZE SANCTIONS](#) ........................ 11
- [TORTIOUS INTERFERENCE WITH ESTATE ADMINISTRATION](#) ............ 11
- [RELIEF REQUESTED](#) ...................................................................... 12
  - [ORDER TO SHOW CAUSE](#) ............................................................... 12
  - [SANCTIONS AND PROTECTIVE RELIEF](#) ............................................. 12
  - [PROTECTIVE ORDERS including:](#) ........................................................ 12
  - [CORRECTIVE ORDERS requiring Apple to:](#) ....................................... 13
  - [EXAMINATION UNDER OATH of Apple representatives regarding:](#) ............... 13
- [BROADER IMPLICATIONS AND SYSTEMIC CONCERNS](#) ...................... 13
- [CONCLUSION](#) ................................................................................ 14
- [CERTIFICATE OF SERVICE](#) ............................................................. 16
- [EXHIBITS](#) ..................................................................................... 17

# DEBTOR'S MOTION FOR ORDER TO SHOW CAUSE AND SANCTIONS AGAINST CREDITOR APPLE INC. FOR INTERFERENCE WITH ESTATE ADMINISTRATION AND ABUSE OF THE BANKRUPTCY PROCESS

## NATURE OF MOTION AND EMERGENCY RELIEF REQUESTED

1. Debtor Ashley Marie Gjovik respectfully moves this Court for an Order to Show Cause requiring creditor Apple Inc. to appear and explain their systematic interference with estate administration, abuse of bankruptcy procedures, and conduct that directly harms both the estate and other creditors.

2. This motion seeks immediate sanctions against a disputed creditor who has weaponized their participation in this bankruptcy case to:

    - Coordinate with the estate trustee to sabotage the estate's primary asset;
    - Make materially false statements about bankruptcy law in federal court to gain litigation advantage;
    - Intimidate and spy on the debtor during statutory bankruptcy proceedings;
    - Manipulate bankruptcy procedures to escape adverse federal litigation rather than defending on the merits.

(Also see concurrently filed Motion to Compel the Trustee).

3. Apple Inc.'s conduct violates this Court's authority, undermines the integrity of bankruptcy proceedings, and directly contravenes the interests of other creditors who depend on proper estate administration.

## FACTUAL BACKGROUND

4. Debtor filed for Chapter 7 bankruptcy on July 21, 2025. (Dkt. 1). J.P. Morgan Chas's legal team had recently called her and informed her they planned to sue her over her credit card debt by end of August 2025. At the time of filing, Debtor did not believe she had any meaningful assets, had no income other than public donations, and her unemployment insurance had just run out several weeks prior and she expected to be unable to pay her rent or basic expenses without help from the public.

5. Debtor is a well-known Big Tech whistleblower and activist, who's disclosures and complaints were covered by international press starting in July 2021 when she started criticizing Apple's business practices, reporting Apple's environmental violations, and making allegations of systemic misconduct by the company.[1] She worked for Apple for over six years and at the time Apple fired her in August 2021, her title was "Senior Engineering Program Manager" and her total compensation the year prior was over $380,000.

6. Since then, Debtor had multiple federal government decisions in her favor against Apple including complaints filed against Apple, inspections of Apple's facilities, and national settlements with the U.S. NLRB and U.S. EPA. See, *Ashley M. Gjovik, Apple Inc,* NLRB Case No. 32-CA-282142, 32-CA-283161 (2021-); *Ashley M. Gjovik, Apple Inc,* NLRB Trilateral National Settlement No. 32-CA-284428 with Permanent Injunction (2021-2025). Debtor/Plaintiff also filed civil litigation against Apple in the Northern District of California in September 2023 under a RICO case that included retaliation, labor violation, toxic tort, and antirust claims. *Gjovik v. Apple Inc.*, Case No. 3:23-cv-04597-EMC (N.D. Cal.).

7. In Debtor's bankruptcy, Apple Inc. occupies a dual role that creates fundamental conflicts: they are both the defendant in the estate's only known potential primary asset (a $30 million retaliation lawsuit) and a disputed creditor in this bankruptcy case. The "Apple Card" debt co-owned by Apple Inc (creditor no. 21011446) and Goldman Sachs (creditor no. 21011445) due to their unique business arrangement and confirmed by CFPB enforcement action.

8. The "Apple Card" debt is disputed by the Debtor because, among other reasons, Apple coerced their employees, including Debtor, to enroll in the "Apple Card" program months before Goldman Sachs Bank formally launched the card, and even upon launch, the program was found unlawfully deficient. (Exhibit D).

9. In 2024, CFPB fined both Apple and Goldman Sachs $89 Million primarily for launching the credit card before legal requirements were met – and Apple enrolled the Debtor months prior to that.[2] (Exhibit C). See, *In re Apple Inc.,* CFPB Admin. Proc. File No. 2024-CFPB-0012, Consent Order (Oct. 23, 2024); *In re Goldman Sachs Bank USA,* CFPB Admin. Proc. File No. 2024-CFPB-0011, Consent

---

[1] Ashley Gjovik, Interviews and Press Coverage (2021-2025), https://www.ashleygjovik.com/press.html
[2] CFPB, *CFPB Orders Apple and Goldman Sachs to Pay Over $89 Million for Apple Card Failures,* Oct. 23 2024, https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-apple-and-goldman-sachs-to-pay-over-89-million-for-apple-card-failures/

Order (Oct. 23, 2024).

10. On July 21 2025, the Debtor filed for bankruptcy noting the Apple Card debt was disputed, and also promptly notified the Trustee of this dispute. (Exhibit A).

11. On July 21 2025, the Debtor posted on Twitter/X complaining about the Apple Card debt "Re: Bankruptcy, trying to figure out the legal status of my Apple Card. Apple pressured some employees to enroll starting in April 2019 (four months before it 'launched') and statements say like "beta" / "seed design" but its a real credit card. Did CFPB ever learn about this?"[3] (Exhibit F).

12. On July 21 2025, Goldman Sachs Bank promptly responded despite not being tagged "Hi there. This is a support specialist at Goldman Sachs. We'd like to take a closer look into this. Kindly give us a call 24/7 at 1-877-255-5923 or chat with us via the Wallet. Our team will be happy to further assist."[4] (Exhibit F).

13. On July 21 2025, Debtor responded "I didn't even tag you, Goldman, where'd you even come from? I think you have to go through Apple's lawyers. I asked them to talk to you about this debt like 20x times and they refused. They also refused to give me a copy of the agreement I signed for the card & said its secret."[5] (Exhibit F).

14. On July 21 2025, Debtor further added, "Apple's main lawyers on the retaliation/labor stuff (where they owe me the money I need to pay off the card) are Orrick for civil and Morgan Lewis for NLRB. I'm not supposed to talk to their "client" directly or they send me angry emails about it. Thanks."[6] (Exhibit F).

15. On July 23 2025, Debtor filed a whistleblower tip to CFPB about the Apple Card "beta program" for employees writing she just "declared Chapter 7 bankruptcy and it came to [her] attention that 1) [her] Apple Card was part of a "seed" program started April 2019, three months prior to the official launch and 2) CFPB's complaints against Apple and Goldman Sachs over Apple launching the card too early only reflects the public launch date of August 2019, not the employee launch dates." (Exhibit D).

16. The dual status of disputed creditor and litigation Defendant gives Apple perverse incentives to sabotage estate recovery while pursuing their own claims and/or concealing their

---

[3] Ashley Gjovik, July 21 2025, https://x.com/ashleygjovik/status/1947176283760189657
[4] Godman Sachs "GS Bank Support", July 21 2025, https://x.com/gsbanksupport/status/1947321165430555090
[5] Ashley Gjovik, July 21 2025, https://x.com/ashleygjovik/status/1947323785717170488
[6] Ashley Gjovik, July 21 2025, https://x.com/ashleygjovik/status/1947324385058005245

misconduct, even if directly contrary to the interests of other creditors and proper estate administration.

17. Due to the prior CFPB enforcement action, Goldman Sachs would also have an improper motive to conceal the "dispute" in the Apple Card debt, and on July 21 2025 the Debtor suggested Goldman Sachs contact Apple's lawyers at Orrick to discuss the matter (this would include the same lawyers engaging in the misconduct giving rise to this very motion).

18. On August 21 2025, Apple sent their litigation counsel Ryan Booms to attend Debtor's 341 Meeting of Creditors for the express purpose of gathering intelligence to use against the estate in federal litigation. (Exhibit H).

19. Apple, via Ryan Booms (a lawyer specializing in complex litigation around "product liability and commercial contracts"), then filed sworn declarations in federal court claiming that standard trustee comments during the 341 meeting somehow "proved" the Debtor had intentionally misled a federal court - a claim that is both factually false and legally frivolous.[7] (Exhibit H). Apple used this as the partial basis to demand a stay and to remove the Plaintiff/Debtor from her own civil lawsuit.

20. Further, this surveillance and intimidation tactic violates the purpose of 341 meetings, represents abuse of statutory bankruptcy procedures for litigation advantage, and may also be evidence of witness intimidation/tampering. Plaintiff/debtor complained to Trustee and Apple on August 21 2025 of exactly that. (Exhibit B).

21. On August 25, 2025, Trustee received a communication from Apple Inc. requesting agreement to stay the federal litigation; confirmation that Trustee, not Debtor, has exclusive standing in the lawsuit; and support for Apple's "emergency" timing arguments. Within 27 minutes, while admittedly on vacation, Trustee responded: "I do not object and also I think it's appropriate to stay." Plaintiff objected to both Trustee and Apple, and demanded information about what they were doing.

22. Despite being an adverse party to the estate's most valuable asset, and its own disputed claim being another potential Estate asset, Apple unilaterally coordinated with Trustee Mark DeGiacomo to agree to stay the federal litigation without any investigation by the trustee into the litigation's value or merits; notice to the debtor or other parties in interest per Fed. R. Bankr. P. 2002; Court approval for the trustee's actions per Fed. R. Bankr. P. 6004; or Employment of specialized counsel per 11 U.S.C. § 327.

---

[7] Orrick, *Ryan Booms,* https://www.orrick.com/en/People/E/9/0/Ryan-Booms

(See Motion to Compel Trustee).

23. On August 25 2025, Apple then proceeded to file an Emergency Motion to Stay making false assertions of bankruptcy law, defaming the Debtor, coercing the Debtor to reveal sensitive law enforcement information, provoking Debtor to attack her own Trustee, and engaging in a full-frontal attack on Debtor's character and competence.

24. Apple weaponized the unauthorized trustee communication by filing emergency motions in federal court claiming the trustee's informal email constituted official court authorization - which it demonstrably did not. (Exhibits H-I).

25. Apple's motion demanded a formal public response from the Plaintiff/Debtor by August 29 2025. The court then further shortened that deadline to August 27 2025. Plaintiff/Debtor filed her response shortly before midnight Pacific Time on August 27 2025. (Exhibit I; 3:23-cv-04597, Dkt. 250).

26. In their federal court filings, Apple made numerous materially false statements about bankruptcy law, including:

- Claiming that properly disclosed litigation constitutes "misconduct";
- Confusing disclosed claims with undisclosed claims by citing inapplicable precedent;
- Claiming that upon filing bankruptcy, a Debtor loses standing in all pending Plaintiff-side litigation;
- Claiming the automatic stay of litigation against the Debtor applies to the Debtor's litigation against others;
- Misrepresenting Trustee investigation and administration;
- Characterizing reasonable abandonment expectations as false statements.

(Exhibit H).

27. These false statements were not mere legal errors but deliberate misrepresentations designed to gain litigation advantage through abuse of bankruptcy procedures, and to sabotage and devalue the Debtor's Estate, while also sabotaging any future action taken by the Estate against it over the Apple Card debt, and currently attempting to sabotage a separate potential federal enforcement action against a different party but which is assumed by the Debtor to be the reason Trustee switched this proceeding to an Asset case on Aug. 13-15 2025. (Exhibit I). See also, Dkt. 17.

28. Apple filed these motions claiming the Debtor/Plaintiff is no longer party of her own

litigation, well after Apple was notified of the Debtor's bankruptcy filings and yet Apple continued the federal civil litigation for 34 days without bankruptcy objections, including joint case management conferences and statements, interrogatories, document production, and deposition planning. (Exhibit I). Only when facing summary judgment, an incoming Citizen Suit, and a pending motion for discovery sanctions did Apple suddenly claim that bankruptcy filing eliminated debtor standing.

29. Further, once the retaliation lawsuit concludes, which could be as soon as by end of this year, the case will be ripe for appeal, and the Debtor/Plaintiff had already tried to appeal twice with one attempt still pending. The lawsuit is federal RICO litigation, coded formally as such, and with 18 U.S.C.A. § 1962 (c)-(d) claims that were dismissed without prejudice yet without leave to amend, and would assumably be reinstated along with Debtor/Plaintiff's 18 U.S.C.A. § 1962 (a) claims. (Exhibit I).

30. In addition to Apple's obstruction the federal retaliation litigation and pending appeal, Apple's conduct also directly harms the estate and other creditors by sabotaging the estate's most valuable known asset through procedural warfare; coordinating with the trustee to stay litigation without proper investigation or court approval; creating artificial urgency and "emergencies" that waste court resources and professional time; harassing and retaliating against the Debtor expressly because she is in Bankruptcy; and compromising the Estate Trustee. (Exhibit I).

# LEGAL ARGUMENT

## APPLE'S CONDUCT CONSTITUTES CONTEMPT OF THIS COURT'S AUTHORITY

31. Apple's systematic interference with estate administration constitutes contempt of this Court's authority over bankruptcy proceedings. By coordinating with the trustee to control estate assets without bankruptcy court approval, and instead attempting to obtain a legal ruling in a completely separate court across the country and under false pretenses, Apple has circumvented this Court's exclusive jurisdiction over estate administration under 28 U.S.C. § 1334.

32. Apple is responsible for the act of its agents, including its external law firms, when they act on Apple's behalf. Further, Apple and Orrick are attempting to use federal RICO litigation to obstruct the bankruptcy proceeding and estate, while both Apple and Orrick are named as a RICO enterprise in that very lawsuit. See for example, *Handeen v. Lemaire,* 112 F.3d 1339, 1350-51 (8th Cir. 1997) (motion to

dismiss properly denied because, if evidence were presented to support allegations, court would not hesitate to conclude that law firm had participated in conducting affairs of enterprise where firm directed parties to enter into false promissory note and manipulated bankruptcy process to obtain discharge).

## APPLE IS VIOLATING THE AUTOMATIC STAY UNDER 362 IN ATTEMTING TO IMPROPERLY SEIZE AND CONTROL THE ESTATE'S PROPERTY

33. In the federal civil litigation, Apple argued that Debtor/Plaintiff "no longer has standing" based on the Trustee's informal email. (Exhibit H). This argument is procedurally impossible and legally frivolous. Until formal court proceedings occur, Plaintiff remains the proper party to this litigation.

34. During bankruptcy, the Estate "owns" the Debtor's legal claims and pending litigation but that ownership relates to the fiscal outcome of litigation with pecuniary damages. Further, even as the "owner" of a claim, the trustee will need to move for Bankruptcy court approval of any settlement. *In re A & C Properties* 784 F.2d 1377 (9th Cir. 1986). Then, after payment of all claims, the "[p]roperty of the estate shall be distributed . . . to the debtor." 11 U.S.C. § 726(a)(1)-(6).

35. The automatic stay does not eliminate debtors as parties, it stays litigation against the debtor. See 11 U.S.C. § 362(b). Critically, "the statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate." *St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir. 1982); *In re Berry Estates,* 812 F.2d 67, 71 (2d Cir.), cert. denied, 484 U.S. 819, 108 S. Ct. 77, 98 L. Ed. 2d 40 (1987). The stay also protects debtors from counter-claims during bankruptcy. *Action Drug Co., Inc. v. Overnite Transp. Co.*, 724 F. Supp. 269 (D. Del. 1989) (where plaintiff-debtor enters bankruptcy, defendant may not assert counterclaim against bankrupt plaintiff), aff'd without op., 902 F.2d 1558 (3d Cir. 1990).

36. "The debtor and property of its bankruptcy estate are protected by the automatic stay in section 362 of the Bankruptcy Code from creditor collection efforts… including litigation, enforcement of judgments, and acts 'to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.'"[8] Here, Apple, a California-based creditor in Plaintiff's Estate, is using litigation and other acts, in California, to take possession of and to exercise control over

---

[8] JD Supra, *Tenth Circuit: Bankruptcy Court Did Not Relinquish Its Jurisdiction by Granting Relief from Automatic Stay,* Sept. 23 2024, https://www.jdsupra.com/legalnews/tenth-circuit-bankruptcy-court-did-not-5500139/

the civil litigation, which is property of the Estate located in Boston, Massachusetts.

## APPLE′S CLAIM SHOULD BE DISALLOWED OR SUBORDINATED

37. Under 11 U.S.C. § 502(d), claims may be disallowed when creditors engage in conduct that harms the estate or other creditors. *Under In re Lazar,* 83 F.3d 306 (9th Cir. 1996), equitable subordination is appropriate when the claimant engaged in some type of inequitable conduct, the misconduct injured creditors or conferred unfair advantage on the claimant, and subordination would not be inconsistent with the Bankruptcy Code. See also, *In re Fabricators, Inc.*, 926 F.2d 1458 (5th Cir. 1991).

38. Apple′s deliberate sabotage of the estate′s primary asset while pursuing their own disputed claims warrants disallowance or equitable subordination of their claim under the inequitable conduct doctrine. Apple cannot simultaneously claim creditor status while actively destroying the estate′s ability to pay creditors - this violates the fundamental principle that creditors share common interests in estate recovery.

## COURT′S INHERENT POWERS AUTHORIZE SANCTIONS

39. This Court possesses inherent power to protect the integrity of its proceedings and prevent abuse of bankruptcy procedures. The Court has inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct. *In re Gil Alberto De Jesus Gomez, III,* 592 B.R. 696 (9th Cir. B.A.P. 2018).

40. Apple′s weaponization of bankruptcy procedures to gain federal litigation advantage represents exactly the type of abuse these inherent powers are designed to address. Sanctions are necessary to deter other creditors from similar manipulation of bankruptcy procedures for litigation advantage.

## TORTIOUS INTERFERENCE WITH ESTATE ADMINISTRATION

41. Apple′s conduct constitutes tortious interference with the trustee′s statutory duties and the estate′s asset recovery efforts. The trustee then purported to agree to stay litigation in which he is not a party and has never appeared

42. As a sophisticated corporate defendant with extensive legal resources, Apple cannot claim ignorance of proper bankruptcy procedures or the impropriety of their improper coordination.

# RELIEF REQUESTED

## ORDER TO SHOW CAUSE

43. **WHEREFORE,** Debtor respectfully requests this Court issue an Order to Show Cause requiring Apple Inc. (and also possibly Goldman Sachs Bank) to appear and explain:

   a) **Why their claim should not be disallowed** under 11 U.S.C. § 502(d) for conduct that harms the estate and other creditors;

   b) **The basis for their improper coordination** with the estate trustee regarding litigation they oppose as defendants;

   c) **Their authority to make agreements** about estate assets without court approval or notice to parties in interest;

   d) **Why their surveillance and intimidation** of the debtor at the 341 meeting does not constitute abuse of statutory bankruptcy procedures;

   e) **Why their materially false statements** about bankruptcy law in federal court do not warrant sanctions for misleading federal courts about this Court's jurisdiction and procedures;

   f) **Why they should not be held in contempt** for systematic interference with this Court's exclusive jurisdiction over estate administration.

## SANCTIONS AND PROTECTIVE RELIEF

44. **IMPOSE SANCTIONS** against Apple Inc., including:

   - **Monetary sanctions** sufficient to deter similar conduct by other creditors;
   - **Disallowance or reduction** of Apple and Goldman Sach's disputed claim under 11 U.S.C. § 502(d);
   - **Equitable subordination** of Apple and Goldman Sach's claim to other creditor claims;
   - **Reimbursement** of estate professional fees caused by Apple's misconduct.

## PROTECTIVE ORDERS INCLUDING:

   - **Prohibition** on any future unauthorized agreements between Apple and the trustee regarding estate matters;
   - **Requirement** that all Apple communications regarding estate administration be filed with

- this Court with notice to all parties;
  - **Restriction** on Apple's participation in estate proceedings beyond filing and defending their claim.

## CORRECTIVE ORDERS REQUIRING APPLE TO:

  - **File corrections** in federal court clarifying the true nature of bankruptcy procedures and their lack of authority to make trustee agreements;
  - **Withdraw false statements** about bankruptcy law and debtor conduct made in federal court filings;
  - **Acknowledge** that their coordination with the trustee was unauthorized and without legal effect.

## EXAMINATION UNDER OATH of Apple representatives regarding:

  - The extent of their coordination with the trustee;
  - Their decision-making process for surveillance of the 341 meeting;
  - Their knowledge of bankruptcy procedures when making false statements in federal court;
  - Any other attempts to manipulate bankruptcy procedures for litigation advantage.

45. **DISCOVERY** regarding Apple's communications with the trustee and any other attempts to influence estate administration.

46. **ESTABLISHMENT OF PROTOCOLS** preventing creditors from abusing their bankruptcy participation to gain advantage in related litigation.

47. Such other relief as this Court deems just and proper.

## BROADER IMPLICATIONS AND SYSTEMIC CONCERNS

48. Apple's conduct presents systemic threats to bankruptcy administration that extend far beyond this individual case. If sophisticated corporate creditors can weaponize their bankruptcy participation to sabotage estate assets, the entire foundation of collective creditor proceedings collapses.

49. Allowing Apple's misconduct to proceed without meaningful sanctions would establish dangerous precedent permitting: coordination between adverse creditors and trustees without court

oversight; destruction of estate assets by interested parties claiming procedural authority they do not possess; false statements about bankruptcy law in federal courts to gain litigation advantage; and surveillance and intimidation of debtors during statutory proceedings.

50. Apple's false representations about bankruptcy law in federal court directly undermine inter-court coordination and respect. When creditors misstate this Court's jurisdiction and procedures to gain advantage in other federal courts, it damages the institutional relationships essential to effective federal judicial administration.

51. Apple's conduct, executed by Big Law partners with sophisticated understanding of the law, represents a particularly dangerous form of professional misconduct. If elite corporate counsel can deliberately make false legal arguments as litigation strategy without meaningful consequences, it undermines professional standards across the federal bar.

52. Apple's dual role as both litigation defendant and creditor creates perverse economic incentives that threaten the bankruptcy system's basic assumptions. Traditional bankruptcy theory assumes creditors want to maximize estate recovery - Apple's conduct proves that assumption fails when creditors have conflicting interests as litigation defendants.

53. Allowing Apple's intimidation tactics and surveillance of statutory proceedings would chill future debtor participation in bankruptcy proceedings. Debtors must be able to participate in 341 meetings without fear that adverse parties will use those proceedings to gather litigation ammunition.

## CONCLUSION

54. Apple Inc.'s conduct represents a sophisticated abuse of bankruptcy procedures designed to gain litigation advantage while harming the estate and other creditors, and continuing their four-year-long harassment and intimidation of the Debtor. Their weaponization of bankruptcy procedures to escape adverse federal litigation cannot be permitted without sanctions.

55. This Court's authority over estate administration and the integrity of bankruptcy proceedings require immediate intervention to prevent Apple from further manipulating bankruptcy procedures for litigation advantage. Other creditors depend on proper estate administration and should not be harmed by Apple's attempts to sabotage estate recovery while pursuing their own disputed claims.

56. Without decisive sanctions, sophisticated corporate creditors will view Apple's conduct

as a roadmap for manipulating bankruptcy proceedings to gain litigation advantage. This Court has the opportunity to establish clear boundaries that protect both estate administration and the integrity of federal court coordination.

57. Debtor respectfully requests this Court grant the relief requested herein and impose sanctions sufficient to deter similar abuse of bankruptcy procedures by other creditors, thereby protecting the integrity of bankruptcy administration for all future debtors and creditors.

58. In compliance with Local Rule 9013-1(b), supporting Declarations and Documents are concurrently filed with this Motion as Exhibits.

59. I declare under penalty of perjury under the laws of the United States of America, and in compliance with Fed.R.Bankr.P. Rule 9011, that the foregoing is true and correct. Executed on August 28 2025 in Boston, Massachusetts.

Respectfully submitted,

**/s/ Ashley M. Gjovik**
*In Propria Persona*
18 Worcester Square, Apt 1
Boston, MA 02118
Dated: August 28 2025

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served upon parties (Trustee) via the Court's electronic filing system and email on or around August 28 2025 (when the pro se clerk posts it). The Trustee will also be served via email on August 28 2025.

Apple is served via email to General Counsel Kate Adams at kate.adams@apple.com; and to Apple's Orrick, Herrington & Sutcliffe legal counsel: Ryan Booms rbooms@orrick.com, Jessica Perry jperry@orrick.com, Melinda Reichert mriechert@orrick.com, Kathryn Mantoan kmantoan@orrick.com on August 28 2025.

Goldman Sachs Bank USA will be promptly mailed a courtesy paper copy addressed to Salt Lake City Branch, Lockbox 6112, P.O. Box 7247, Philadelphia, PA 19170.

Apple and the U.S. Court are noticed via posting a copy of this Motion to the federal docket for *Gjovik v. Apple Inc,* 3:23-cv-04597-EMC (N.D. Cal.) August 28 2025.

Debtor's July 23 2025 Consumer Financial Protection Bureau whistleblower tip will be provided an updated with email service of this motion on August 28 2025.

# EXHIBITS

**Exhibit A** - Email Exchange Between Debtor and Trustee, July 22-23, 2025 (Debtor's disclosure of Apple Card conflicts and potential estate assets)

**Exhibit B** - Email from Debtor to Apple, August 21, 2025 (Debtor's complaint about Apple's strategic attendance at 341 meeting and intimidation tactics)

**Exhibit C** – Record of CFPB 2024 Enforcement on the "Apple Card"

**Exhibit D** – Debtor's whistleblower tip to CFPB re: "Apple Card"

**Exhibit E** - Email Communications Between Trustee, Apple, Gjovik, August 25 2025

**Exhibit F** - Twitter/X Exchange with Goldman Sachs, July 21, 2025

**Exhibit G** – Ryan Booms Orrick profile

**Exhibit H** - Apple's Federal Court Filings, August 25, 2025 (Emergency Motion to Stay and supporting documents, Case No. 3:23-cv-04597-EMC, Dkt. 247-248)

**Exhibit I** – Debtor/Plaintiff's Opposition to Apple's Federal Court Filings, August 25, 2025 (Emergency Motion to Stay and supporting documents, Case No. 3:23-cv-04597-EMC, Dkt. 247-248)